UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JANE DOE (P.T.L.), an individual                    CIVIL ACTION

VERSUS                                              NO. 25-1812

CHOICE HOTELS                                       SECTION M (3)
INTERNATIONAL, INC., *et al.*

**<u>ORDER & REASONS</u>**

Before the Court is a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure by defendants Choice Hotels International, Inc. and Choice Hotels International

Services Corp. (together, "Choice").[1]    Plaintiff Jane Doe (P.T.L.) ("Plaintiff") responds in

opposition,[2] and Choice replies in further support of its motion.[3]    Having considered the parties'

memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting

the motion in part and denying it in part.

I.    **BACKGROUND**

This case concerns claims arising under the Trafficking Victims Protection Reauthorization

Act ("TVPRA"), 18 U.S.C. § 1595(a).  Plaintiff alleges that, from January 2013 to December 2014,

she was trafficked for sex at a Sleep Inn located in Kenner, Louisiana (the "Kenner Sleep Inn").[4]

Choice is the franchisor of the "Sleep Inn" brand.[5]    The Kenner Sleep Inn was owned and operated

by defendant TAMS of Kenner, Inc. d/b/a Sleep Inn ("TAMS"), as a franchisee of the Sleep Inn

brand.[6]    Plaintiff alleges that Choice and TAMS "derived financial benefit from facilitating sex

---

[1] R. Doc. 50.
[2] R. Doc. 69.
[3] R. Doc. 73.
[4] R. Doc. 1 at 3, 7.
[5] *Id.* at 4.
[6] *Id.* at 4-5.

trafficking by providing a venue where traffickers could exploit victims, including [her], with minimal risk of detection or interruption," and "continued providing support for traffickers, including her own trafficker, despite obvious and apparent signs of sex trafficking at these hotels," specifically at the Kenner Sleep Inn, meaning that defendants "knowingly receiv[ed] a benefit from participating in a venture that [they] knew or should have known was engaged in sex trafficking."[7]

In her complaint, Plaintiff outlines the general prevalence of sex trafficking in the hotel industry and states that, as hotel proprietors, Choice and TAMS "were aware or should have been aware of" the signs of sex trafficking and "knew or should have known" that it was occurring at the Kenner Sleep Inn.[8] She claims that defendants "had a responsibility to adopt, implement, and adequately enforce policies to avoid facilitating sex trafficking and train hotel staff to identify and respond to 'red flags' of sex trafficking" and to avoid benefiting from room rentals for commercial sex acts.[9] Plaintiff then chronicles reported incidents of "widespread" sex trafficking at "Choice hotels' branded properties."[10] None of the cited news reports or online reviews are specific to the Kenner Sleep Inn.[11] Plaintiff claims that, due to these reports that Choice allegedly monitored, Choice "knew, or should have known," that its properties, including the Kenner Sleep Inn, were being used for sex trafficking and that "[t]he common use of Choice … branded hotels for sex trafficking became a nationwide problem that stemmed from decisions made at the corporate/franchisor level."[12] The complaint further alleges that Choice "chose to earn revenue by continuing conduct that [it] knew or should have known would facilitate [sex] trafficking."[13]

---

[7] *Id.* at 3.
[8] *Id.* at 8-13 (quotes at 11).
[9] *Id.* at 11, 13 (quote at 13).
[10] *Id.* at 13-22 (quote at 13).
[11] *Id.*
[12] *Id.* at 14, 21.
[13] *Id.* at 22.

As to the Kenner Sleep Inn, Plaintiff alleges that Choice and TAMS "knew or should have known about the pervasive sex trafficking at the [property] based on obvious indicators of this activity."[14]  She cites a 2014 Yelp review in which the customers stated that they chose the hotel because they "were looking to stay in an affordable room that wasn't frequented by hookers."[15]  The rest of the review mentioned positives related to price, free Wi-Fi, cleanliness, and free airport shuttle, along with negatives related to flat pillows, a slick tub, light pollution, and lobby and interstate traffic noise.[16]  Plaintiff asserts that sex traffickers selected the Kenner Sleep Inn because it had "policies and practices that created a favorable environment for trafficking and because hotel staff turned a blind eye to signs of trafficking [or] well-known 'red flags' for sex trafficking in the hospitality industry."[17]   Without referencing any specific instances besides her own, Plaintiff claims that there were "multiple trafficking victims" at the Kenner Sleep Inn during the relevant time and that Choice "learned or should have learned about the obvious signs of widespread trafficking" at that hotel through surveillance of the property, internal investigations, customer complaints, monitoring customer feedback, information from law enforcement, and the obligation of hotel staff and management to report suspected sex trafficking to Choice.[18]

Plaintiff lists "obvious signs" of her own trafficking, including: (a) rooms paid for with cash or prepaid card; (b) "other girls" being trafficked at the same time; (c) extended stays during which housekeeping was kept away with the "Do Not Disturb" sign; (d) housekeeping being prevented from performing regular cleaning, towel exchanges, or other standard room services; (e) the trafficker's presence with Plaintiff at check-in and his lingering around the hotel or parking

---

[14] *Id.* at 22.
[15] *Id.*
[16] *Id.* at 22-23.
[17] *Id.* at 23.
[18] *Id.* at 24-25.

lot when Plaintiff was with a "john"; (f) heavy foot traffic to Plaintiff's room involving men who were not hotel guests; (g) Plaintiff being "forced to see" nearly every day at least five "johns" who came and went at unusual hours but were on the property for only brief periods; and (h) "[o]ther obvious signs of trafficking consistent with the modus operandi of her traffickers and which included well known 'red flags' for trafficking in a hotel."[19]   Plaintiff says that employees and managers of the Kenner Sleep Inn were aware of these signs of trafficking, and as a result, Choice knew or should have known that she was being trafficked at the hotel because it had a policy requiring that hotel staff report such activity.[20]   Plaintiff alleges that, even with this actual or constructive knowledge, TAMS and Choice continued to profit by renting rooms to sex traffickers, thus facilitating her victimization.[21]   She faults TAMS for failing to adopt adequate hiring, training, supervising, managing, and disciplinary policies for its employees and proper notice-and-reporting policies for suspected sex trafficking, which omissions encouraged sex traffickers, who could freely operate at the property.[22]   Plaintiff further imputes TAMS's alleged failings to Choice as the franchisor, which, she claims, exercised significant control over the day-to-day operation and management of the Kenner Sleep Inn, including renting rooms, training staff, and setting policies regarding the response to human trafficking.[23]   According to Plaintiff, Choice "had a direct business relationship with traffickers operating at the [Kenner] Sleep Inn because [it] directly rented rooms at the hotels, directly received payment, and received real-time guest information," along with "developing brand loyalty [by] creat[ing] a favorable environment for trafficking."[24]

---

[19] *Id.* at 26.
[20] *Id.*
[21] *Id.* at 27-34.
[22] *Id.* at 27-28.
[23] *Id.* at 28-39.
[24] *Id.* at 30-31.

Plaintiff filed this action in the United States District Court for the District of Maryland, Southern Division, on December 30, 2024.[25]  Against TAMS, she asserts TVPRA perpetrator and beneficiary liability claims under 18 U.S.C. § 1595(a).[26]  Against Choice, Plaintiff brings a TVPRA beneficiary liability claim and a claim for vicarious liability for TAMS's alleged actions.[27]  The case was transferred to this Court because the federal court in Maryland lacked personal jurisdiction over TAMS.[28]  Choice now moves to dismiss.

## II.    PENDING MOTION

### A.  Choice's Motion to Dismiss

Choice argues that Plaintiff's TVPRA beneficiary claim and vicarious liability claim against Choice are insufficiently pleaded under Rule 8 of the Federal Rules of Civil Procedure because Plaintiff does not provide any details of her alleged trafficking, including her identity, that of her alleged traffickers, or any potential witnesses with respect to her allegations.[29]  Choice urges the Court to consider its exemplar franchise agreement, which, says Choice, is central to Plaintiff's claims, "contains all of the key terms relevant to the instant case," and has been found by other courts to contradict the very same allegations made here.[30]

Choice argues that Plaintiff did not plead a viable TVPRA beneficiary claim against Choice because Plaintiff failed to "plead a cognizable venture, much less Choice's affirmative and knowing participation in any venture that involved [her] alleged trafficking."[31]  Reciting the elements of a TVPRA beneficiary claim articulated by the Eleventh Circuit in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 719, 723 (11th Cir. 2021), Choice contends that alleging "participation in

---

[25] *Id.* at 1.
[26] *Id.* at 39-40.
[27] *Id.* at 40-41.
[28] R. Doc. 42.
[29] R. Doc. 50-1 at 8-9.
[30] *Id.* at 10-12 (quote at 11) (citing R. Doc. 7-3).
[31] *Id.* at 9-10, 13-28 (quote at 9-10).

a venture" requires more than a statement that the defendant failed to observe or prevent the plaintiff's alleged trafficking, or trafficking in general, and also requires more involvement than a buyer-seller transaction at the franchisor level, especially in light of the terms of the exemplar franchise agreement which places responsibility for the day-to-day operations and control of the hotel on the franchisee.[32]   Choice contends that, as a franchisor, it had no direct interaction with Plaintiff's alleged trafficker and, thus, could not have participated in a venture with him.[33]   In other words, Choice maintains that Plaintiff's claim of "participation in a venture" collapses into the following "deficient allegations: that traffickers purportedly rented rooms from [TAMS], and Choice tangentially benefitted from those rentals by receiving royalties from [TAMS] under the terms of the contractual [f]ranchise [a]greement."[34]   Further, says Choice, allegations that it failed to prevent sex trafficking across its franchised hotels are insufficient to allege participation in a venture with any individual sex trafficker.[35]   Additionally, Choice contends that Plaintiff did not properly allege a commercial venture because she did not allege that Choice harbored her or knowingly assisted her traffickers.[36]

Choice also asserts that, under *Doe #1*, "the knowledge elements require victim-specific knowledge," rendering insufficient Plaintiff's allegations regarding its knowledge of, or willful blindness to, sex trafficking in general.[37]   According to Choice, Plaintiff attempts to show knowledge by improperly relying on news reports and customer reviews that purport to show that Choice knew, in general, that sex trafficking occurred at its branded hotels.[38]   And she fails to

---

[32] *Id.* at 13-19.
[33] *Id.* at 13, 19-20.
[34] *Id.* at 18-19.
[35] *Id.* at 15-17.
[36] *Id.* at 20-24.
[37] *Id.* at 13, 24-27 (quote at 13).
[38] *Id.* at 24-25.

allege that Choice knew or should have known about her trafficking in particular.[39]  Choice further argues that Plaintiff's allegations of "red flags" are insufficient because they could indicate prostitution, rather than sex trafficking, and Choice could not have observed the "red flags" from its distant corporate headquarters.[40]  Moreover, Choice says that Plaintiff's allegations of Choice's knowledge based on "information and belief" are contradicted by the terms of the exemplar franchise agreement, which places the ownership and operation of the hotel with the franchisee – here, TAMS.[41]

As to Plaintiff's vicarious liability claim, Choice argues that the TVPRA does not explicitly recognize such a claim and the Supreme Court "has cautioned against reading forms of 'secondary liability' into federal statutes."[42]  Next, Choice contends that Plaintiff's vicarious liability claim against it fails because she has not asserted a viable TVPRA claim against TAMS.[43]  Choice further argues that vicarious liability requires agency, which is not established by the mere existence of a franchise agreement, especially where, as here, the exemplar franchise agreement disclaims any agency on Choice's part and assigns the day-to-day management of the hotel to TAMS.[44]  Choice characterizes Plaintiff's agency allegations as references to "nothing more than irrelevant policies [designed to protect the brand and so] wholly unrelated to trafficking … much less any trafficking experienced personally by Plaintiff."[45]

Lastly, Choice argues that all of Plaintiff's claims are time-barred under the TVPRA's 10-year statute of limitations.[46]  Choice points out that Plaintiff claims to have been trafficked at the

---

[39] *Id.* at 24-25.
[40] *Id.* at 25-27.
[41] *Id.* at 26-27.
[42] *Id.* at 29 (citing *Cent. Bank of Denv., N.A. v. First Interstate Bank of Denv., N.A.*, 511 U.S. 164, 177, 184 (1994)).
[43] *Id.*
[44] *Id.* at 10, 30-31.
[45] *Id.* at 31.
[46] *Id.* at 10, 31-32.

Kenner Sleep Inn between January 2013 and December 2014, but she did not file her complaint until December 30, 2024.[47]  Thus, says Choice, "only two possible alleged dates fall within the ten-year statute of limitations: December 30th and 31st."[48]  Choice concludes that, given the tight window and because she does not plead that she was present at the Kenner Sleep Inn on either of those two days, "it strains both credulity and the limits of plausibility that Plaintiff has any viable claim left."[49]

### B.  Plaintiff's Opposition

In opposition, Plaintiff argues that the Court should not consider the exemplar franchise agreement because it was not attached to her complaint and is not central to her claim.[50]  She argues that "central" in this context means that the claim is necessarily based on the proffered evidence, not just that the evidence is relevant to the claim.[51]  Further, Plaintiff argues that the exemplar franchise agreement is not the entire agreement between Choice and TAMS and cannot be read in insolation without considering other documents and regulations that govern the franchise relationship.[52]

Plaintiff contends that she pleaded a valid TVPRA beneficiary claim against Choice by alleging that Choice "negligently facilitated trafficking by renting hotel rooms to traffickers despite obvious signs of their trafficking activity and/or operating a hotel in ways it knew or should have known would facilitate trafficking at its hotels."[53]  Plaintiff argues that Choice advocates for "a narrow, atextual view of beneficiary liability" by "insist[ing] that a franchisor cannot be liable

---

[47] *Id.* at 32.
[48] *Id.*
[49] *Id.*
[50] R. Doc. 69 at 4-7.
[51] *Id.* at 5-6.
[52] *Id.* at 6-7.
[53] *Id.* at 7-8 (quote at 8).

even if it knew or should have known it was profiting from facilitating trafficking at its hotels."[54]

Plaintiff says that the majority of courts to consider the issue have held that the TVPRA requires

only that the hotel negligently failed to take reasonable steps to respond to a known sex-trafficking

problem in its operations, not that the hotel share the trafficker's purpose, commit specific acts in

furtherance of trafficking, or have actual knowledge of a specific plaintiff's victimization.[55]  Citing

*A.B. v. Wyndham Hotel & Resorts, Inc.*, 2025 WL 1920417, at *3 (M.D. Pa. July 11, 2025),

Plaintiff argues that stating a TVPRA beneficiary claim against a franchisor requires alleging that

the defendant: "(1) knowingly benefitted; (2) from participating in a venture; (3) that it knew or

should have known was engaged in sex trafficking."[56]  According to Plaintiff, the "knowingly

benefitted" prong requires only that the defendant received a financial benefit from renting a room

to a trafficker.[57]  Similarly, Plaintiff asserts that the "participating in a venture" prong requires

only that the franchisor facilitate the venture by engaging in a continuous business relationship

with a trafficker by renting him a room, even if it had no knowledge of the trafficking.[58]  In other

words, Plaintiff says that a TVPRA beneficiary claim requires simply that the defendant "provid[e]

commercial services that facilitate sex trafficking."[59]  Plaintiff claims that the TVPRA does not

require an in-person relationship between the defendant and the trafficker and she alleges that

Choice, as the franchisor, participated in renting rooms to sex traffickers at the Kenner Sleep Inn

when it should have known that sex trafficking was occurring at that hotel due to the manner in

which the hotel was operated.[60]  Further, Plaintiff argues that the *mens rea* element must be

interpreted broadly and her complaint allows for "reasonable inferences" that Choice had sufficient

---

[54] *Id.* at 9.
[55] *Id.* at 9-12.
[56] *Id.* at 12.
[57] *Id.*
[58] *Id.* at 12-17.
[59] *Id.* at 15.
[60] *Id.* at 13-17.

control over the Kenner Sleep Inn such that it should have known of the sex trafficking, especially given that "TAMS was required to report suspected trafficking to Choice and that the obvious red flags triggered that obligation."[61]  Plaintiff contends that there is no requirement that Choice knew or should have known of her specific trafficking, just sex trafficking at the Kenner Sleep Inn generally, and that Choice should have acted reasonably to detect and deter sex trafficking in its operations.[62]

As to her vicarious liability claim, Plaintiff asserts that she pleaded such a claim and that courts apply ordinary agency principles to TVPRA claims.[63]  Plaintiff argues that she plausibly alleges a TVPRA claim against TAMS, as well as an agency relationship between Choice and TAMS due to Choice's control over TAMS's operations, all as would support a TVPRA vicarious liability claim against Choice.[64]

Lastly, Plaintiff argues that the Court should not consider Choice's statute-of-limitations argument because her complaint plausibly alleges that at least part of her claim occurred during the limitations period.[65]  She also asserts, without explanation, that the continuing violation doctrine, equitable tolling, and the discovery rule all apply to forestall any time bar.[66]

### C. Choice's Reply

Choice replies, reurging the Court to consider the exemplar franchise agreement, which it says is central to Plaintiff's claims and directly contradicts them.[67]  Choice points out that, without a franchise agreement, it has no relationship with TAMS.[68]  Choice also argues that Plaintiff has

---

[61] *Id.* at 17-20 (quote at 18).
[62] *Id.* at 19-21.
[63] *Id.* at 21.
[64] *Id.* at 22-25.
[65] *Id.* at 25-26.
[66] *Id.* at 26.
[67] R. Doc. 73 at 6-8, 12-13.
[68] *Id.* at 7-8.

not pleaded a TVPRA beneficiary claim against it because she has not alleged that Choice, located in Maryland, directly participated in her alleged trafficking in Louisiana, and Choice insists that facilitation by room rental, which is a standard commercial transaction, is insufficient.[69]  Further, Choice reasserts its arguments that Plaintiff has not pleaded a plausible vicarious liability claim against Choice and emphasizes that the exemplar franchise agreement makes clear that it did not have control over room rentals at the Kenner Sleep Inn.[70]  Finally, Choice argues that, even if Plaintiff's entire claim does not fall outside the statute of limitations, "numerous courts have curtailed the temporal scope of TVPRA claims based on the untimeliness" of part of the claim.[71]  Choice also contends that the continuing violation doctrine, which has its roots in employment law, has never been adopted in the TVPRA context in the Fifth Circuit and, regardless, Plaintiff has not met her burden of demonstrating that it applies.[72]

## III.  LAW & ANALYSIS

### A.  Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements

---

[69] *Id.* at 8-11.
[70] *Id.* at 13-15.
[71] *Id.* at 15.
[72] *Id.*

of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's

12

likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B. Plaintiff's TVPRA Beneficiary Claim against Choice**

The TVPRA provides a civil remedy to sex-trafficking victims against the "perpetrator" or "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in" sex trafficking. 18 U.S.C. § 1595(a). Because Choice is not alleged to be a "perpetrator," Plaintiff's TVPRA claim against Choice is a beneficiary claim, *i.e.,* one brought against a party that allegedly "knowingly benefited" from sex trafficking. *K.H. v. Riti, Inc.*, 2024

WL 505063, at *2 (11th Cir. Feb. 9, 2024).  To state a civil beneficiary claim under the TVPRA, "a plaintiff must plausibly allege that the defendant (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff."  *Doe #1*, 21 F.4th at 719.

Here, Plaintiff fails to plausibly allege that Choice participated in a venture with the sex trafficker.  In other words, she fails to allege that Choice participated with the sex trafficker in a common undertaking or enterprise involving risk and potential profit.  Plaintiff alleges that Choice received a financial benefit from her sex trafficker's room rentals and from collecting real-time guest information.[73]  These allegations alone are insufficient to establish that Choice participated in a sex-trafficking venture.  She alleges that some unknown employees saw the "red flags" of sex trafficking, but she in no way alleges that Choice, TAMS, or any of their employees actively participated in the sex-trafficking venture.  As noted by the Eleventh Circuit, "observing something is not the same as participating in it."  *Id.* at 727.  In short, Plaintiff has not plausibly alleged the "participation in a venture" element.  *Compare id.* at 726-27 (holding that franchisors did not participate in a venture with sex traffickers where they received rent for rooms, investigated hotels, took remedial action when revenue was down, read online reviews mentioning prostitution occurring generally at the hotels, and controlled the training of hotel managers and employees who were allegedly involved in facilitating sex trafficking at the hotels by acting as police lookouts), *and Riti*, 2024 WL 505063, at *2 (following *Doe #1* and holding that franchisee did not participate in a venture with sex trafficker where it received rent from rooms and merely observed the signs

---

[73] R. Doc. 1 at 30.

of sex trafficking), *and N.G. v. G6 Hosp. Prop. LLC*, 2025 WL 1332210 (M.D. Fla. May 7, 2025) (holding that a hotel's alleged receipt of a financial benefit was insufficient alone to plead participation in a venture even when the plaintiff alleged that a male front-desk employee partook in the sex-trafficking activity), *and Doe (A.S.) v. Wyndham Hotels & Resorts*, 2024 WL 6069251, at *1 (N.D. Tex. June 10, 2024) (holding that "[a]llegations that amount to contentions that a hotel financially benefitted from renting hotel rooms to plaintiff's trafficker and that the hotel should have also observed signs of sex trafficking fail to state a viable [TVPRA beneficiary] claim"), *with I.R. v. I Shri Khodiyar, LLC*, 723 F. Supp. 3d 1327 (N.D. Ga. 2024) (denying summary judgment where there was evidence that the hotel owner's managerial employee solicited sex from the plaintiff and other women in exchange for free lodging; traffickers chose hotel because they knew people there and the owners had allowed trafficking; manager and part-owner saw the plaintiff chained to bedframe in a trafficker's room; and managerial employees would visit the rooms of plaintiff and other women when they were with "johns" to see if they needed anything), *and Riccio v. McLean*, 853 F.3d 553 (1st Cir. 2017) (holding that motel owner participated in a venture with sex trafficker where they had prior criminal dealings and expressed a wish to reinstate the criminal venture for profit "by exchanging high-fives in the motel's parking lot while speaking about 'getting this thing going again,' in circumstances in which [the sex trafficker]'s coercive and abusive treatment of [the plaintiff] as a sex slave had become apparent to [the motel owner]").  On the continuum created by the foregoing cases, Plaintiff's allegations fall far closer to the cases holding that the "participation in a venture" element was not sufficiently alleged than those holding that it was.

Additionally, Plaintiff did not plausibly allege that Choice had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to her.  Plaintiff alleges that

15

Choice generally knew about sex trafficking in the hotel industry and some of its branded hotels.[74] She also alleges that given such general knowledge, combined with the cited 2014 Yelp review that alludes to prostitution (but does not mention sex trafficking) at the Kenner Sleep Inn and Choice's alleged monitoring of the hotel, Choice should have known about the sex trafficking at the Kenner Sleep Inn.[75] These allegations are too general to sufficiently plead the knowledge element. *See, e.g., Doe (K.B.) v. G6 Hosp., LLC*, 2023 WL 8650785, at *6 (N.D. Ga. Dec. 14, 2023) (holding that allegations of a franchisor's awareness of online reviews discussing trafficking at the hotel and regular inspections were insufficient to plead the knowledge requirement). Moreover, allegations that impute constructive knowledge to Choice on the premise that it would have detected sex trafficking at the Kenner Sleep Inn if it had exercised diligence in training staff and implementing and enforcing policies for reporting and responding to sex trafficking are insufficient because "the TVPRA does not impose an affirmative duty to prevent sex trafficking."[76] *Doe (K.B.) v. G6 Hosp., LLC*, 2024 WL 4701891, at *3 (N.D. Ga. Nov. 5, 2024) (collecting cases). In sum, Plaintiff's complaint fails to sufficiently allege the "participation in a venture" and knowledge elements of a TVPRA beneficiary claim, and her TVPRA beneficiary claim against Choice is therefore dismissed without prejudice.

---

[74] *Id.* at 13-22.
[75] *Id.*
[76] *Id.* at 31-34.

## C.  Plaintiff's Vicarious Liability Claim against Choice

Choice contends that Plaintiff's allegations are insufficient to support a claim that it had an agency relationship with TAMS.[77]  Neither party undertakes a choice-of-law analysis.[78]  Therefore, as other district courts have done, this Court will apply federal common law on agency, which looks to the *Restatement of Agency*.  *See Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 2024 WL 4204906, at *8 (E.D.N.C. Sept. 16, 2024) (collecting cases).  An agency relationship "is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."  RESTATEMENT (THIRD) OF AGENCY § 1.01.  Whether an agency relationship exists is generally a question of fact.  *Stripling v. Jordan Prod. Co.,* 234 F.3d 863, 870 (5th Cir. 2000).

In TVPRA cases, courts have recognized that a plaintiff sufficiently states a vicarious liability claim against a hotel franchisor by alleging that the franchisor exercised control over the franchisee's day-to-day operations of the hotel by being involved in "hosting online bookings, setting hotel employee wages, making employment decisions for the hotels, providing standardized training methods for hotel employees, and fixing hotel room rent prices."  *J.M. v. Choice Hotels Int'l, Inc.*, 2022 WL 10626493, at *5 (E.D. Cal. Oct. 18, 2022) (collecting cases).  On the other hand, "allegations 'tending to show that the franchisors' involvement was limited to

---

[77] R. Doc. 50-1 at 29-31.  Choice also argues that the TVPRA does not recognize a vicarious liability claim.  *Id.* at 29.  Choice does not cite, and this Court is unaware of, any case holding that the TVPRA does not support a vicarious liability claim.  Indeed, several district courts have allowed such a claim to proceed, and, absent binding precedent precluding the claim, this Court will follow suit and allow it to proceed at this time.  *See, e.g., Doe (A.R.G.) v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 4224915, at *7 (W.D. Tex. Aug. 30, 2024) (citing *B.J. v. G6 Hosp., LLC,* 2023 WL 3569979, at *7 (N.D. Cal. May 19, 2023)).  Additionally, Choice contends, without any analysis, that Plaintiff's vicarious lability claim against it fails because she has not stated a valid TVPRA claim against TAMS.  Due to the lack of analysis on this point and because there is no pending motion by TAMS to dismiss the claims against it, the Court will not consider this argument at this juncture.

[78] *See* R. Docs. 50-1; 69; 73.

uniformity and standardization of the brand have been found to be insufficient to establish complete control over the day-to-day operations of the franchisee's business." *Doe (A.R.G.)*, 2024 WL 4224915, at \*8 (quoting *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 708-09 (E.D. Mich. 2020)).

Against this backdrop, Plaintiff has alleged enough facts to support a vicarious liability claim against Choice. She alleges that Choice controlled the details of guest reservations, check-in, identity verification, and payments; controlled a brand-wide "do not rent" system; controlled room rates, required discounts, mandatory fees, and a rewards program; controlled the franchisee's ability to refuse or cancel reservations; collected and analyzed data on guests; established guest relations protocols; and controlled what computer and internet services were offered at the hotel.[79] Specific to sex trafficking, Plaintiff alleges that Choice retained control over the franchisee's response to the issue, including training staff on how to spot and respond to suspected sex trafficking, such as determining when to involve law enforcement.[80] These allegations – which are not limited to uniformity and standardization of the brand – are enough to state a claim at this motion-to-dismiss stage. But Choice protests that the exemplar franchise agreement expressly disclaims any agency and assigns day-to-day management of the hotels to TAMS. Still, because agency is a fact-specific inquiry and the exemplar franchise agreement is but one item pertinent to the agency analysis, the Court cannot use it now to entirely dismiss Plaintiff's agency claim. Thus, Choice's motion to dismiss the vicarious liability claim is denied.

### D. Time Bar

The TVPRA provides that claims must be brought within 10 years after the cause of action arises. 18 U.S.C. § 1595(c)(1). Plaintiff alleges that she was trafficked at the Kenner Sleep Inn

---

[79] *Id.* at 29-30.
[80] *Id.* at 28-29.

from January 2013 through December 2014.[81]  She filed her complaint on December 30, 2024, ostensibly within the 10-year period.[82]  Because Plaintiff's claims do not appear to be time-barred on the face of the complaint and neither party offers a fulsome analysis of the issue, the Court will not dismiss any of Plaintiff's claims on this basis at this stage of the case.  *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006) (stating that "[a]lthough dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint").

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Choice's Rule 12(b)(6) motion to dismiss (R. Doc. 50) is GRANTED as to Plaintiff's TVPRA beneficiary claim against Choice, which is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff is granted leave to file an amended complaint alleging facts to meet Rule 8's pleading requirements as to her TVPRA beneficiary claim against Choice.  Any amended complaint shall be filed within fourteen (14) days from the date this Order is issued, and failure to timely file an amended complaint curing the noted deficiencies will lead to dismissal with prejudice.

IT IS FURTHER ORDERED that the motion is otherwise DENIED.

New Orleans, Louisiana, this 25th day of November, 2025.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[81] R. Doc. 1 at 7.
[82] *Id.* at 1.

19