**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JANE DOE (P.T.L), an individual** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-1812** |
| **CHOICE HOTELS INTERNATIONAL, INC., ET AL.** | **SECTION: N** |

**ORDER AND REASONS**

Before the Court is the Motion to Dismiss of Defendant TAMS of Kenner, Inc. d/b/a Sleep Inn ("TAMS"), in which it asks the Court to dismiss with prejudice all claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Plaintiff Jane Doe filed an opposition,[2] and TAMS filed a reply in further support of its motion.[3] TAMS also filed a notice of supplemental authority in further support of its motion.[4] Having carefully considered the parties' written arguments, the record, and applicable law, the Court issues this Order and Reasons granting the motion to dismiss.

## I. BACKGROUND

This case involves claims arising under the Trafficking Victims Protection Reauthorization Act ("TVPRA") for the alleged involvement of a franchisor, Choice Hotels International, Inc., and a franchisee, TAMS of Kenner, Inc. d/b/a Sleep Inn, in

[1] Rec. Doc. 91.
[2] Rec. Doc. 96.
[3] Rec. Doc. 99.
[4] Rec. Doc. 105.

the sex trafficking of Plaintiff Jane Doe.[5] Doe alleges that Choice and TAMS "derived financial benefit from facilitating sex trafficking by providing a venue where traffickers could exploit victims."[6] Doe further alleges that Defendants continued providing support for traffickers, including her own, despite "obvious and apparent signs of sex trafficking" at the Sleep Inn (TAMS) in Kenner, Louisiana.[7]

Prior to transfer to the present section of the Court, Judge Ashe issued an order dismissing without prejudice a claim for beneficiary liability under § 1595(a) of the TVPRA against Choice and allowed Jane Doe to file an amended complaint.[8] After Doe filed an amended complaint,[9] Choice again moved to dismiss.[10] This time, the Court dismissed with prejudice the beneficiary liability claim.[11] The Court did not dismiss Doe's claim against Choice for vicarious liability for TVPRA violations.[12] TAMS now moves to dismiss Doe's claims for perpetrator liability and beneficiary liability under § 1595(a).[13]

Doe alleges she was continuously and unlawfully trafficked at TAMS "at various times between January 2013 through at least the end of December 2014."[14] Through information and belief, as well as online reviews and news stories, Doe broadly outlines the prevalence of sex trafficking at Choice Hotels-branded

---

[5] Rec. Doc. 78.
[6] *Id.* ¶ 9.
[7] *Id.* ¶¶ 9-10.
[8] Rec. Doc. 77.
[9] Rec. Doc. 78.
[10] Rec. Doc. 79.
[11] Rec. Doc. 85. (The Court did not dismiss the vicarious liability claim against Choice).
[12] Rec. Doc. 77 at 18.
[13] Rec. Doc. 91.
[14] Rec. Doc. 78 ¶ 23.

properties.[15] With respect to TAMS specifically, Doe alleges her traffickers repeatedly chose TAMS for their trafficking activities, and that TAMS knew or should have known of this behavior based on "obvious indicators."[16]

Doe cites multiple reasons that TAMS knew or should have known of the sex trafficking activities in its hotel. She references internet reviews, specifically a 2014 Yelp review that references "hookers."[17] Doe states that her traffickers chose TAMS because of its policies and practices "that created a favorable environment for trafficking and because hotel staff turned a blind eye to signs of trafficking."[18] She states this environment created an "implicit understanding" and continuous business relationship between the traffickers and TAMS.[19] During this time period, Doe's trafficker, as a recurring customer, was assigned rooms in a more secluded portion of the hotel, including "rooms that reduced visibility to other guests."[20]

Doe further alleges there were obvious, well-known "red flags" of sex trafficking that were observed by hotel staff.[21] The red flags included payment with cash or prepaid cards, high volumes of men bringing unregistered guests in and out of their rooms at unusual times, individuals with few possessions staying for extended periods, and "other signs."[22] Doe states TAMS staff consistently observed her "drugged and present[ing] as glassy-eyed, unresponsive, and visibly high during

---

[15] *Id.* ¶¶ 45-53.
[16] *Id.* ¶ 56.
[17] *Id.* ¶ 57.
[18] *Id.* ¶ 58.
[19] *Id.* ¶ 59.
[20] *Id.* ¶ 73.
[21] *Id.* ¶¶ 58, 62.
[22] *Id.* ¶ 59.

these encounters."[23] On multiple occasions staff and management allegedly observed Doe with visible bruising on her face and arms, as well as being unable to stand or walk without difficulty.[24] Doe's trafficker would often wait in the hallway while she was with a john.[25] Additionally, housekeeping was kept away and out of rooms for multiple days at a time and there was heavy foot traffic of men who were not hotel guests in and out of Doe's room at unusual hours.[26]

Because of these observed behaviors, Doe states TAMS knew or was willfully blind to the trafficking that she experienced. Doe brings two counts against TAMS under 18 U.S.C § 1595(a): (1) perpetrator liability based on violation of 18 U.S.C § 1591(a), and (2) beneficiary liability.[27]

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of her claim that would entitle her to relief.[28] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[29] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

---

[23] *Id.* ¶ 70.
[24] *Id.* ¶¶ 71-72.
[25] *Id.* ¶ 74.
[26] *Id.* ¶ 75.
[27] *Id.* ¶¶ 107-114.
[28] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

the misconduct alleged."[30] The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[31]

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[32] "Determining whether a complaint states a plausible claim for relief [is] … a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[33] "Although detailed factual allegations are not required," "[d]ismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[34]

## III. <u>LEGAL ANALYSIS</u>

In 2000 Congress enacted the Trafficking Victims Protection Reauthorization Act to prohibit "the sex trafficking of children or adults by force, fraud or coercion."[35] Subsequent amendments of the TVPRA allowed victims to bring civil actions to recover damages against participants who benefit from sex-trafficking activity.[36] Section 1595 allows a victim to bring a civil action against "the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by

---

[30] *Id.*
[31] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citation modified).
[32] *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).
[33] *Id.*
[34] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (citation modified).
[35] *Doe (T.L.M.) v. Six Continents Hotels, Inc.*, 829 F. Supp. 3d 95, 99 (S.D. Miss. 2026) (quoting 18 U.S.C. § 1591) (citation modified).
[36] *Id.*

receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter).”[37]

### A. Count I: Perpetrator Liability

To state a claim for perpetrator liability under § 1595, Jane Doe must allege that TAMS knowingly “(1) recruited, enticed, harbored, transported, provided, obtained, or maintained [her]; (2) knowing that force, threats of force, coercion, or any combination of such means would be used; (3) to cause [her] to engage in a commercial sex act.”[38] A *perpetrator* under § 1595(a) is someone who has violated the criminal statute, § 1591.[39] Unlike a beneficiary claim, “to establish that a defendant is a perpetrator in violation § 1591(a), the plaintiff must show that the defendant had actual knowledge of the sex trafficking at issue.”[40] “Actual knowledge” means “[d]irect and clear knowledge, as distinguished from constructive knowledge.”[41] Under Federal Rule of Civil Procedure 9(b), “knowledge … may be alleged generally.”

TAMS contends that Doe’s operative complaint fails to sufficiently allege a claim for perpetrator liability.[42] TAMS asserts the complaint contains no sufficient factual statements that show it knew it was harboring Doe as a sex-trafficking victim. Doe responds that she sufficiently alleged that TAMS knowingly or in reckless disregard harbored her.[43] Doe compares her case to other district court cases that

---

[37] 18 U.S.C. § 1595.
[38] *Doe v. Hotels*, No. 6:23-CV-1012, 2024 WL 2955728, at *5 (M.D. Fla. June 12, 2024) (citation modified); *see also* 18 U.S.C. §§ 1591(a), 1595.
[39] *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021).
[40] *Id.*; *see also Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 473 (E.D.N.C. 2024) (discussing that the knowledge requirement is greater for perpetrator claims than beneficiary claims).
[41] Actual knowledge, Black’s Law Dictionary (12th ed. 2024).
[42] Rec. Doc. 91-1 at 5.
[43] Rec. Doc. 96 at 14.

found plaintiffs plausibly alleged perpetrator liability by alleging that defendants were willfully blind to red flags of trafficking.[44]

The Court agrees with TAMS as to perpetrator liability. Drawing all reasonable inferences in her favor, Doe does not sufficiently allege that TAMS possessed actual knowledge that it was harboring Doe as she was subjected to force, threats of force, coercion, or any combination of such means to cause her to engage in a commercial sex act. Doe's arguments and amended complaint focus on the signs she claims should have indicated to TAMS that she was being trafficked. Such signs are that Doe and her trafficker stayed at the Sleep Inn for a week at a time once per month during the two-year period she was trafficked there; staff and management observed plaintiff under the influence of drugs such that she could not stand or walk without difficulty; staff and management observed that she had visible bruising on her face and arms; on multiple occasions the hotel manager assigned her trafficker with rooms in a more secluded portion of the hotel; staff and management observed that her trafficker would wait in the hallway outside the room while she was with a john; her trafficker frequently paid for the room with cash or prepaid cards; housekeeping was kept away with a "Do Not Disturb" door hanger; and multiple johns entered and left her room each day at unusual hours.[45] The Court finds that this is not enough to meet the actual knowledge requirement for perpetrator liability.[46]

---

[44] *Id.*
[45] Rec. Doc. 78 ¶¶ 70-76.
[46] *42 Hotel Raleigh, LLC*, 717 F. Supp. 3d at 473; *see Noble v. Weinstein*, 335 F. Supp. 3d 504, 518 (S.D.N.Y. 2018).

These allegations fail to establish that TAMS had knowledge—actual or even constructive—of Doe's trafficking.

In *Doe v. 42 Hotel Raleigh, LLC*, the court found it "conceivable" that plaintiff's allegations amounted to constructive knowledge of illegal prostitution, "but plaintiff does not plead such knowledge of sex trafficking by force or fraud."[47] Doe's complaint similarly lacks any allegation that could be so construed, such as known assault by her trafficker, verbal abuse by the trafficker, cries for help that staff heard and ignored, hotel staff acting as lookouts, or online reviews describing sex trafficking at the hotel. Without anything more, the sole allegation that conceivably references any use of force—bruising on Doe's face and arms—is insufficient to allege knowledge without any detail connecting the bruising to her trafficker or signs of Doe being trafficked.

The nature of Doe's allegations stand in marked contrast to the allegations in *Doe v. Hotels*, where the plaintiff alleged that the franchisee was aware of sex trafficking because of "an implicit understanding between the hotel staff … and the traffickers" and the "obvious and apparent signs of trafficking," including interactions with the front desk staff and in common areas of the hotel, which were detailed in the complaint.[48] Such signs included, among many others, that housekeeping staff witnessed a john fleeing the plaintiff's room, after which she yelled for help, heard sounds of abuse, screaming, and crying, and found plaintiff's room littered with used condoms and other sex paraphernalia, and that other staff witnessed her physical

---

[47] 717 F. Supp. 3d 464, 472 (W.D.N.C. 2024).
[48] 2024 WL 2955728, at *1.

and mental deterioration, inappropriate and sexually suggestive clothing, frequent crying, and verbal abuse from her trafficker. Although Doe alleges her trafficker would often wait in the hallway while she was with a john,[49] that housekeeping was kept away and out of rooms for multiple days at a time, and that there was heavy foot traffic of men who were not hotel guests in and out of her room at unusual hours,[50] these do not rise to the level of interactions alleged in *Doe v. Hotels*, nor do they properly show TAMS had actual or constructive knowledge.

Because Doe failed to allege TAMS had the requisite knowledge, the perpetrator liability claim fails.

### B. Count II: Beneficiary Liability

While courts state the elements for a beneficiary claim with slight variations,[51] the parties here generally agree that the claim has three elements: the defendant (1) knowingly benefitted; (2) from participation in a venture; (3) it knew or should have known has engaged in sex trafficking.[52]

---

[49] Rec. Doc. 78 ¶ 74.
[50] *Id.* ¶ 75.
[51] The Eleventh Circuit applies four elements: "(1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Red Roof Inns*, 21 F.4th at 726. Other courts apply a three-element test: (1) the person or entity must knowingly benefit, financially or by receiving anything of value, (2) from participating in a venture, (3) that the "person knew or should have known has engaged in an act in violation of this chapter." *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019); *see also A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020).
[52] Rec. Doc. 91-1 at 7; Rec. Doc. 96 at 4; *see also Red Roof Inns*, 21 F.4th at 724 (stating elements of beneficiary claim).

### 1. *Knowingly Benefited*

To satisfy the first element, Doe must allege that TAMS knew it was "receiving some value from participating in the alleged venture."[53] District courts have found that "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element."[54]

Doe alleges that TAMS knowingly received benefits, "including increased revenue," every time a room was rented by traffickers.[55] The Court finds that Jane Doe plausibly alleges the first element.

### 2. *From Participation in a Venture*

TAMS argues that Doe did not adequately allege the "participation in a venture" element. To define this element, TAMS combines the definition in the criminal provision, definitions from Black's Law Dictionary, and out-of-circuit precedent.[56] Mainly, TAMS argues that the definition requires an overt act by the plaintiff, and that Doe did not plead TAMS committed any overt act.[57] Lastly, TAMS states that any conclusory allegations Doe does make are not particularized enough to survive a motion to dismiss.[58] Doe argues that participation in a hotel-operating venture in a way that facilitates sex trafficking is enough to satisfy this element.[59] She also avers that this element does not require an overt act.[60]

---

[53] *Red Roof Inns*, 21 F.4th at 724.
[54] *See J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1234 (N.D. Ga. 2022) (citing a collection of cases).
[55] Rec. Doc. 78 ¶ 99.
[56] Rec. Doc. 91-1 at 7-9.
[57] *Id.* at 8.
[58] *Id.* at 9-10.
[59] Rec. Doc. 96 at 10.
[60] *Id.* at 11-12.

To define the "participation in a venture" element, the Court looks to the text of the statute. For purposes of the criminal provisions, Section 1591(e)(4) defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)," which criminalizes the use of force or coercion to cause someone to engage in a commercial sex act. Section 1595 does not include a definition for the phrase, thus raising the question of its interpretation for civil liability.

While the Fifth Circuit has not "substantively engaged with the beneficiary liability theory in § 1595(a) in the sex trafficking context,"[61] at least three other circuit courts have analyzed this provision. The Eleventh Circuit in *Red Roof* applied the plain meaning of "participation in a venture," rather than incorporate the definition from Section 1591. The Eleventh Circuit held that the text of the statute overcame the usual presumption that Congress intends phrases in the same statute to mean the same thing for two reasons: (1) § 1591 states that its definition of "participation in a venture" only applies to that section, and (2) the application of the criminal definition in the civil provisions "makes no sense" because it creates a nonsensical sentence.[62] Ultimately, drawing upon Black's Law Dictionary and the Oxford English Dictionary, the Eleventh Circuit interpreted "participation in a venture" to mean "[taking] part in a common undertaking or enterprise involving risk and potential profit."[63] The Second and Seventh Circuits likewise declined to import

---

[61] *Doe (K.E.C.) v. G6 Hosp., LLC*, 750 F. Supp. 3d 719, 729 (E.D. Tex. 2024).
[62] *Red Roof Inns*, 21 F.4th at 724.
[63] *Id.* at 725.

§ 1591's definition into § 1595.[64] Looking to the ordinary meaning, the Second Circuit held that "participation in a venture" requires a plaintiff to show that "the defendant took part in an enterprise or undertaking that involved elements of risk, potential gain, or both."[65] Similarly, the Seventh Circuit defined the phrase as a "continuous business relationship, which gives rise to an inference, drawn in the plaintiff's favor, that the civil defendant facilitated the venture's success."[66]

This Court is unpersuaded that there is any meaningful substantive difference between the definitional variations at the motion to dismiss phase.[67] In all of these cases, the "definitions require that the alleged participant have an ongoing interest in the success of a specific venture and elect to further the ends of the venture beyond what would reasonably be expected in an ordinary commercial transaction."[68] Consistent with the order dismissing Doe's beneficiary claim against Choice and the Eleventh Circuit, the Court adopts the plain meaning of the phrase: "Participation in a venture" requires a plaintiff to allege the defendant took part in a common understanding or enterprise involving risk and potential profit.[69] Under this definition, merely engaging in an arm's-length transaction to provide goods or

---

[64] *Mueller v. Deutsche Bank Aktiengesellschaft*, 185 F.4th 307, 313 (2d Cir. 2026); *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023).
[65] *Mueller*, 185 F.4th at 313.
[66] *G.G.*, 76 F.4th at 560.
[67] *See Doe (S.M.A.) v. Salesforce, Inc.,* No. 3:23-CV-0915-B, 2024 WL 1337370, at *13 (N.D. Tex. Mar. 28, 2024); *Doe (T.L.M.) v. Six Continents Hotels, Inc.*, 829 F. Supp. 3d 95, 106 (S.D. Miss. 2026).
[68] *Salesforce, Inc.*, 2024 WL 1337370, at *13.
[69] *See Red Roof Inns*, 21 F.4th at 724-25 (citing *Venture*, Black's Law Dictionary (11th ed. 2019) ("[a]n undertaking that involves risk; esp., a speculative commercial enterprise"); *Venture*, Oxford English Dictionary 520 (2d ed. 1989) ("[a]n enterprise of a business nature in which there is considerable risk of loss as well as chance of gain; a commercial speculation"); *Participation*, Black's Law Dictionary (11th ed. 2019) ("[t]he act of taking part in something"); *Participate*, Oxford English Dictionary 268 (2d ed. 1989) ("[a] taking part, association, or sharing (with others) in some action or matter")).

services to someone does not constitute participation in a venture, even if the seller has actual or constructive knowledge that person is engaged in sex trafficking.[70] Financially benefiting from renting rooms to sex traffickers alone does not amount to participating in a venture.[71]

In *Riti*, the Eleventh Circuit applied its four-element test to hold that the trafficking victim did not plausibly allege that the franchisee participated in a venture.[72] It reasoned that the victim's allegations amounted to "contentions that [franchisee] benefitted from renting hotel rooms to [the victim's] trafficker and that [the franchisee] observed signs of sex trafficking at the hotel.[73] These allegations alone were "not sufficient to establish that the defendant participated in a sex trafficking venture and observing signs of sex trafficking is 'not the same as participating in it.'"[74]

Here, Doe's complaint fails to allege any participation by TAMS in a venture with the alleged traffickers. In *Riti*, the victim outlined general behaviors associated with sex trafficking that she alleged the franchisee employees observed.[75] Just as the court in that case found those allegations to be insufficient to infer that the franchisee took part in a common undertaking or enterprise, the general behaviors that Doe alleges TAMS observed are also insufficient to meet this element. Additionally, Doe's

---

[70] *See A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257, 1269 (11th Cir. 2026) (quoting *Doe 1 v. Apple, Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024)).
[71] *See* Rec. Doc. 77 (franchisor's financial benefit from Doe's sex trafficker's room rentals and from collecting real-time guest information did not constitution participation in a venture) (discussing case law).
[72] *K. H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *4 (11th Cir. Feb. 9, 2024).
[73] *Id.*
[74] *Id.* (quoting *Red Roof*, 21 F.4th at 726).
[75] *Id.*

allegations that her trafficker stayed at TAMS for "a week at a time approximately once per month during the two years she was trafficked at this location" is not sufficient to establish a continuous business relationship.[76] Because Doe's allegations are insufficient to allege participation in a venture by TAMS, Doe's fails to allege a beneficiary claim.

*3. Knowledge that the venture engaged in an act in violation of § 1591*

The parties also dispute which *mens rea* standard applies to TAMS. TAMS equates "knew or should have known" to "actual knowledge or reckless disregard" as to Doe's personal trafficking.[77] Doe argues that § 1595(a) does not require that a hotel had notice of a plaintiff's tracking specifically.[78]

Circuit courts are split on whether actual or constructive knowledge of the particular victim is required. The Eleventh Circuit holds the victim-specific view—the defendant must have knowledge as to the plaintiff.[79] The Seventh Circuit rejected the victim-specific approach because Congress would have "simply said so" if it meant to require actual or constructive knowledge of the specific victim.[80]

The Court finds that the Seventh Circuit's interpretation is consistent with the plain meaning of the statutory text. Section 1595 does not require a civil litigant to show that the defendant knew that a particular litigant was a victim. Rather, the plain text requires only that that person benefited from participation in a venture he

---

[76] Rec. Doc. 78 at ¶ 69.
[77] Rec. Doc. 91-1 at 11.
[78] Rec. Doc. 96 at 16.
[79] *Red Roof Inns, Inc.*, 21 F.4th at 725.
[80] *G.G.*, 76 F.4th at 557.

or she knew or should have known "has engaged in an act in violation of this chapter." If Congress intended to require a victim to show a beneficiary had knowledge that the victim was specifically harmed by the violation, it would have stated such.

For the reasons discussed above as to perpetrator liability, however, Doe has not alleged that TAMS knew or should have known that Doe's trafficker was engaged in sex trafficking. Doe alleges no facts evidencing that the hotel knew sex trafficking took place on the property.[81] Instead, the only online review that was specific to TAMS in Kenner that the complaint cites suggests that there was no prostitution at the hotel and doesn't reference trafficking at all.[82] Further, the Court is unpersuaded that the general behaviors Doe cites are adequate to show that TAMS should have known of the trafficking.

Viewing the allegations in the light most favorable to Doe, the Court finds she failed to allege a beneficiary claim as to TAMS.

### C. Count III: Vicarious Liability for TVPRA Violations as To Choice Hotels

Because the Court dismisses all claims against TAMS, and because the Court previously dismissed the beneficiary claim against Choice, the one remaining claim in the case is vicarious liability as to Choice. Vicarious liability is not an independent cause of action.[83] Without any underlying liability on the part of TAMS, Choice cannot be vicariously liable. Thus, because both underlying beneficiary and

[81] *Compare Doe v. Hotels*, 2024 WL 2955728 at *6-7.
[82] Rec. Doc. 78 at ¶ 57.
[83] *Miller v. Target Corp.*, 854 F. App'x 567, 570 (5th Cir. 2021) (citing *Crooks v. Moses*, 138 S.W.3d 629, 637 (Tex. App. 2004)).

perpetrator claims as to TAMS and Choice are dismissed, the vicarious liability claim is also dismissed.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that TAMS of Kenner, Inc.'s motion to dismiss[84] is **GRANTED.** Doe's claims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that the vicarious liability claim as to Choice Hotels International, Inc. and Choice Hotels International Services Corp. is **DISMISSED WITHOUT PREJUDICE.**

New Orleans, Louisiana, this 25th day of November, 2026.

Anna St John

**ANNA ST. JOHN**
**UNITED STATES DISTRICT JUDGE**

---

[84] Rec. Doc. 91.